IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. CR-12-65-D (No. CIV-15-470-D) |
| JOHNNIE RAY BRAGG, JR., | ) ) | |
| Defendant. | ) | |

## **O R D E R**

Before the Court is Defendant Johnnie Ray Bragg, Jr.'s Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence [Doc. No. 511]. The Motion is supported by a memorandum of law and exhibits [Doc. No. 512], including copies of correspondence and affidavits of Defendant and his wife, codefendant Lakisha Perry a/k/a Lakisha Bragg (hereafter "Lakisha"). The government has filed a response, accompanied by an affidavit of Defendant's original attorney, Billy Coyle [Doc. No. 527], and Defendant has filed a reply [Doc. No. 533]. For reasons that follow, the Court finds that no hearing is needed and the Motion should be denied on the existing record.[1]

In his Motion, Defendant asserts two claims for relief: Ground One, Mr. Coyle provided ineffective assistance in connection with Defendant's plea of guilty to two counts of the Indictment; and Ground Two, the Court abused its discretion in denying Defendant's

---

[1] No evidentiary hearing is needed where the existing record conclusively shows the defendant is not entitled to relief. *See United States v. Lopez*, 100 F.3d 113, 121 (10th Cir. 1996); 28 U.S.C. § 2255(b).

motion to withdraw his guilty plea before sentencing. *See* Motion at 5, 6. In support of Ground One, Defendant asserts that his attorney erred in the following particulars: 1) failing to discuss with Defendant certain discovery materials produced by the government; 2) failing to investigate and advise Defendant about available defenses; 3) coercing Defendant to plead guilty by joining with Assistant United States Attorney Leslie Maye in making false promises to drop all pending charges against his wife Lakisha and have her released from detention, to obtain Defendant's release from a restricted housing unit of the jail, and to cease any federal investigation of charges related to a "cell phone incident;" 4) misrepresenting the amount of prison time that Defendant would receive; 5) failing to file a motion to suppress evidence obtained from court-authorized wiretaps; and 6) failing to explain the Sentencing Guidelines and their likely effect on Defendant's sentence. *See* Def.'s Mem. Supp. Mot. [Doc. No. 512] (hereafter, "Def.'s Br.") at 5, 9, 12, 19, 24, 29.[2]

## Factual and Procedural Background

Defendant Bragg pleaded guilty on August 8, 2012, to Counts 1 and 2 of the Indictment. The grand jury charged Defendant and 12 codefendants on March 6, 2012, with 47 offenses; Defendant was named in 33 counts: Count 1, conspiracy to distribute

---

[2] Defendant makes a seventh assertion in support of Ground One, that a two-point firearm enhancement was erroneously used to determine his advisory guideline range of imprisonment under the Sentencing Guidelines. *See* Def.'s Br. at 30. However, Defendant challenges only the sufficiency of the evidence to support the enhancement, not the performance of his counsel. Also, Mr. Coyle did not represent Defendant at sentencing. Therefore, the Court finds this assertion does not support the ineffective assistance claim asserted in the Motion. If it was intended as a separate claim, it is barred by Defendant's waiver, discussed *infra*.

multiple Schedule I and Schedule II controlled substances, in violation of 21 U.S.C. § 846; Count 2, conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h); Counts 6, 7, 10, 14, 16, 24, 25, 27, 28, 35, 37 and 47, money laundering in violation of 18 U.S.C. § 1956(a)(1); Counts 8, 15, 26, 30 and 31, interstate travel in furtherance of the drug conspiracy, in violation of 18 U.S.C. § 1952(a)(3); and Counts 12, 13, 17, 18, 19, 20, 32, 34, 36, 38, 41, 42, 43 and 44, using a telephone in furtherance of the drug conspiracy, in violation of 21 U.S.C. § 843(b). The alleged conspiracies spanned a time period from September 2010 to April 2011, and involved drug trafficking and financial transactions between California and Oklahoma. The government's evidence was obtained through physical surveillance, investigative activities, court-authorized wiretaps, and cooperating witnesses.

Defendant's presentence report was initially disclosed on November 2, 2012. Within the time period for written objections, the Court received a handwritten letter from Defendant stating he wanted to withdraw his guilty plea and wanted a new attorney. His reason for withdrawing the plea was that he "did not know what [he] was doing" when he entered it. *See* Letter filed 11/15/12 [Doc. No. 285]. Specifically, Defendant stated that the prosecutors and his appointed counsel, Mr. Coyle, promised him that Lakisha would be released from jail if he signed the plea papers, that he did not understand the charges until Mr. Coyle later provided him with copies of written discovery, and that he was not guilty of the charges. Defendant also accused Mr. Coyle of not communicating with him, working with the prosecutor to induce him to plead guilty, and failing to prepare a defense.

On December 3, 2012, the Court ordered the appointment of new counsel to replace Mr. Coyle, and denied Defendant's *pro se* request to withdraw his plea. Defendant's new attorney, Bill Zuhdi, obtained a plea hearing transcript and subsequently filed a motion to withdraw Defendant's guilty plea. This motion was again based on allegations, supported by Defendant's affidavit, that the plea was "not knowingly and voluntarily entered but was coerced, and that Mr. Coyle failed to disclose to him certain documents produced in discovery that revealed possible defenses." *See* 3/19/13 Order [Doc. No. 325] at 2. The Court denied the motion on March 19, 2013, without a hearing. *See id*. at 1.

In the meantime, Defendant was indicted in February 2013 on a new charge that he had attempted to intimidate a cooperating witness in this case between November 2012 and January 2013. *See United States v. Bragg*, Case No. CR-13-32-D, Indictment (W.D. Okla. Feb. 19, 2013). Shortly before trial was set to begin, Defendant reached a second plea agreement with the government (through the same prosecutors) and entered a plea of guilty on April 8, 2013, admitting that he sent a threatening letter to a witness in late 2012 in an attempt to prevent the witness's cooperation. Final presentence reports were then completed in both cases, and a combined sentencing hearing was held. In July 2013, the Court imposed concurrent 480-month prison sentences on Counts 1 and 2 in this case, to be followed by a consecutive 46-month term of imprisonment in the second case.

Defendant appealed, but the Tenth Circuit dismissed the appeals upon motions of the government to enforce appeal waivers contained in both plea agreements. *See United States v. Bragg*, 554 F. App'x 781 (10th Cir. 2014). In an effort to avoid dismissal of the appeal, Defendant made allegations of ineffective assistance against Mr. Coyle affecting

4

the validity of the waiver in this case, but the court of appeals ruled that the claim must be brought in a collateral proceeding under § 2255. *Id*. at 783. Defendant timely filed the instant § 2255 Motion.

## Collateral-Attack Waiver

Defendant signed a plea agreement by which he "voluntarily waive[d] his right to . . . "[a]ppeal or collaterally challenge his guilty plea, sentence restitution imposed, and any other aspect of his conviction . . ." and "[a]ppeal, collaterally challenge, or move to modify under 18 U.S.C. §3582(c)(2) or some other ground, his sentence as imposed by the Court and the manner in which the sentence is determined, provided the sentence is within or below the advisory guideline range determined by the Court to apply to this case." *See* Plea Agreement [Doc. No. 186] at 9, ¶ 8(a)-(b). The government asserts that all claims except Defendant's allegations against Mr. Coyle that draw into question the validity of Defendant's guilty plea, are barred by his waiver of the right to collaterally challenge his conviction and sentence.[3]

The Tenth Circuit has already determined that the waiver is enforceable "without prejudice to [Defendant's] ability to bring a § 2255 motion claiming ineffective assistance of counsel to the extent permitted by his collateral-attack waiver and applicable precedent, including [*United States v.*] *Cockerham*," 237 F.3d 1179 (10th Cir. 2001). *See Bragg*, 554 F. App'x at 783. Under *Cockerham*, 237 F.3d at 1187, a defendant cannot waive "ineffective assistance claims challenging the validity of the plea or the waiver." Most of

---

[3] Ground Two of Defendant's Motion plainly falls within the scope of the waiver; this claim challenges only the Court's ruling on Defendant's motion to withdraw his guilty plea.

5

Defendant's allegations in support of the ineffective assistance claim in Ground One of his Motion are not barred by the waiver of collateral-attack rights because they draw into question the validity of his plea agreement or his guilty plea.[4] Thus, the Court proceeds to consider only Defendant's ineffective assistance claim to this extent.

## Standard of Decision

"A successful claim of ineffective assistance of counsel must meet the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)." *United States v. Harms*, 371 F.3d 1208, 1211 (10th Cir. 2004). Under this test, Defendant must show that his "counsel committed serious errors in light of 'prevailing professional norms' and that there is a 'reasonable probability' that the outcome would have been different had those errors not occurred." *United States v. Haddock*, 12 F.3d 950, 955 (10th Cir. 1993) (quoting *Strickland*, 466 U.S. at 688, 694); *accord United States v. Mora*, 293 F.3d 1213, 1217 (10th Cir. 2002). Courts apply "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 669; *see United States v. Barrett*, 797 F.3d 1207, 1214 (10th Cir. 2015) (counsel's performance must be "completely unreasonable, not merely wrong"); *Byrd v. Workman*, 645 F.3d 1159, 1167 (10th Cir. 2011) (same). "An insufficient showing

---

[4] Defendant does not challenge the validity of the waiver itself, which was specifically addressed when he entered his guilty plea. At the plea hearing, the Court reminded Defendant that he was waiving the right to appeal or collaterally challenge the sentence imposed except in limited circumstances, and Defendant stated that he understood. *See* 8/8/12 Hr'g Tr. [Doc. No. 314], 6:17-21. Defendant made the same response to a summary by the Assistant United States Attorney, *id*. at 10:19-21, 11:8-11, and affirmed under oath that his waivers of rights were made voluntarily and completely of his own free choice. *Id*. at 9:14-17.

on either element is fatal to an ineffective-assistance claim, rendering consideration of the other element unnecessary." *Smith v. Duckworth*, 824 F.3d 1233, 1249 (10th Cir. 2016); *see Byrd*, 645 F.3d at 1168.

In the context of a guilty plea, the prejudice prong of *Strickland* requires Defendant to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see Premo v. Moore*, 562 U.S. 115, 131-32 (2011); *United States v. Silva*, 430 F.3d 1096, 1099 (10th Cir. 2005). This showing involves an objective component; "proof of prejudice requires a petitioner to show that 'a decision to reject the plea bargain would have been rational under the circumstances.'" *See Heard v. Addison*, 728 F.3d 1170, 1184 (10th Cir. 2013) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)) (emphasis omitted). The assessment includes "objective factors such as whether an unmade evidentiary or legal discovery 'likely would have changed the outcome of a trial,' or whether a defense about which the defendant was not advised 'likely would have succeeded at trial.'" *Id*. at 1183 (quoting *Hill*, 474 U.S. at 59). A showing of prejudice also involves a subjective component, which "take[s] into account a particular defendant's own statements and actions in determining whether he would have insisted on going to trial." *Id*. Where a defendant claims a guilty plea was involuntary due to counsel's errors, the "defendant's statements on the record, 'as well as any findings by the judge accepting the plea, constitute a formidable barrier.'" *Romero v. Tansy*, 46 F.3d 1024, 1033 (10th Cir. 1995) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

7

## Discussion

Defendant claims he received ineffective assistance of counsel because Mr. Coyle:

1) "fail[ed] to reveal, review or discuss the government's released discovery materials prior to coercing [him] into pleading guilty" (Def.'s Br. at 5);

2) "fail[ed] to advise him that he had 'viable defenses' to the conspiracy and related offenses" (Def.'s Br. at 9);

3) "coerced [Defendant] to plead guilty in conjunction with the United States' Attorney's representative" (Def.'s Br. at 12);

4) failed to provide competent advice "during the plea negotiation stages" (Def.'s Br. at 19);

5) "fail[ed] to file for suppression hearing to challenge the Title III wire interception affidavits" (Def.'s Br. at 24);[5] and

6) "fail[ed] to explain the Sentencing Guidelines and the effect the guilty plea would have in the formulation of applicable sentence the Court would later impose" (Def.'s Br. at 29).

Liberally construing these allegations, they amount to claims of ineffective assistance of counsel affecting the validity of the plea agreement or Defendant's guilty plea.

### 1. Failure to Provide Discovery Materials to Defendant

Defendant does not contend Mr. Coyle failed to review the discovery materials provided by the government; he instead complains that Mr. Coyle did not provide copies of the materials to Defendant before he pled guilty.[6] Defendant submits correspondence

---

[5] "Title III" refers to the federal wiretap statute, Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-20.

[6] In the affidavit submitted with the government's response brief, Mr. Coyle states that he reviewed written discovery materials with Defendant and used his laptop computer to play recordings of wiretapped telephone conversations for Defendant at the Grady County jail. Because Defendant denies this review occurred, the Court disregards this dispute of fact.

from Mr. Coyle or his office dated October 26, 2012, and November 1, 2012, transmitting copies of discovery materials. *See* Def.'s Br., Exs. 2 & 7 [Doc. Nos. 512-3 and 512-8]. Defendant argues that because he was not able to review the discovery materials for himself before pleading guilty, he was unaware of weaknesses in the prosecution's case against him. Defendant does not explain what the alleged weaknesses were, unless he is referring to the existence of "viable defenses," discussed *infra*.

While the Court does not discount the importance of defense counsel's reviewing discovery materials with a defendant, the Court finds no factual basis to conclude that Mr. Coyle's conduct fell below an objective standard of reasonableness. There is no question that the written discovery materials in this complex conspiracy case were voluminous and much of the government's evidence was stored and produced electronically, thus limiting counsel's ability to share it directly with Defendant in his custodial setting. The Court further finds from Defendant's allegations no indication that Mr. Coyle's failure to provide the discovery materials to Defendant undermined the validity of his guilty plea. Defendant does not identify any particular discovery material, or any particular issues other than the alleged "viable defenses" discussed *infra*, that might have affected his decision to plead guilty or altered the factual basis of his plea.

Therefore, the Court finds Defendant's allegations regarding Mr. Coyle's failure to provide discovery materials are insufficient to show ineffective assistance of counsel.

**2. Failure to Advise Defendant of Viable Defenses**

The defenses that Defendant believes were overlooked by Mr. Coyle are not clearly identified, other than by reference to possible challenges to the credibility of witnesses and

9

the validity of court-authorized wiretaps. Defendant argues that "numerous witnesses who gave statements were factually not credible to testify at trial" and factual statements given by the government's witnesses "demonstrate numerous factual inconsistencies." *See* Def.'s Br. at 7, 10. Defendant's arguments regarding the wiretaps are not entirely clear, but he suggests that further investigation into "the wiretap applications, or where the cell site locations were located during the inceptions [sic]" might have provided a basis to challenge the admissibility of intercepted communications based on Title III's territorial jurisdiction requirement. *Id*. at 10. These speculative arguments provide no basis to determine that Mr. Coyle overlooked any meritorious defense or that Defendant was prejudiced by any omission.[7] Therefore, the Court finds that Defendant's allegation that Mr. Coyle failed to advise him regarding possible defenses is insufficient to show ineffective assistance of counsel.

### 3. Coercion Through False Promises of Non-Prosecution and Release

Defendant accuses Mr. Coyle of serious misconduct. Defendant claims Mr. Coyle acted in concert with one of the prosecutors, Ms. Maye, to coerce Defendant to plead guilty with false promises regarding the prosecution of his wife Lakisha and her release from

---

[7] Other defendants moved to suppress evidence obtained through the wiretaps but raised no issue of territorial jurisdiction. *See*, *e.g.*, Def. Bailey's Mot. Suppress Title III Wiretap [Doc. No. 79]. The government's response to the motions substantiated the validity of the wiretaps. *See* Govt's Consol. Resp. Br. [Doc. No. 150] at 9-20. Further, Title III's territorial jurisdiction requirement is satisfied if either the wiretapped telephone or the government's listening post is located within the authorizing court's jurisdiction. *See Dahda v. United States*, 138 S. Ct. 1491, 1495 (2018). Thus, Defendant's speculation that some cell phones may have been located outside the Court's jurisdiction when communications were intercepted would not provide a basis to suppress the evidence obtained.

detention, his release from a segregated housing unit ("SHU") of the Grady County jail where he was being held, and the pursuit of federal charges based on an incident in which Lakisha allegedly attempted to smuggle a cell phone into the jail for him. Although the last allegation is new (and curious, because no charge resulted from the cell phone incident), Defendant raised similar allegations in the motion to withdraw his guilty plea before sentencing. For similar reasons, the Court finds that Defendant has failed to allege a sufficient factual basis to establish ineffective assistance of counsel.

Defendant stated in his Petition to Enter Plea of Guilty, under penalty of perjury, that his guilty plea was made voluntarily and "completely of [his] own free choice, free of any force threats or pressures from anyone" and, specifically, that no promise aside from the Plea Agreement had been made by anyone that caused him to plead guilty. *See* Pet. Enter Plea Guilty [Doc. No. 187] (hereafter "Plea Pet.") at 9-10, ¶¶ 39, 41.[8] Defendant's sworn testimony during the change-of-plea hearing also undermines a later claim that his guilty plea was coerced. Defendant and Mr. Coyle appeared before the Court and were questioned about the Plea Agreement and Defendant's understanding of its terms, the charges in Counts 1 and 2, possible punishments, and the rights waived by a guilty plea. Defendant was examined under oath by Ms. Maye and the Court. The undersigned specifically questioned Defendant about the Plea Petition and his understanding of the plea

---

[8] The Plea Agreement also expressly states Defendant's understanding that it "contain[ed] the only terms of the agreement concerning his guilty plea in this case, and that there are no other deals, bargains, agreements, or understandings which modify or alter these terms." [Doc. No. 186] at 15, ¶ 18. However, Defendant signed the agreement on July 24, 2012, before his conversation with Ms. Maye and Mr. Coyle allegedly occurred on August 8, 2012. *Id*. at 15.

proceeding. Defendant testified unequivocally that the Plea Agreement, as summarized by Ms. Maye, contained the complete understanding and agreement of the parties, and that no other promises caused him to plead guilty. *See* 8/8/12 Hr'g Tr. [Doc. No. 314] (hereafter, "Plea Tr."), 11:8-21. After carefully considering Defendant's testimony and demeanor and his answers to the questions posed, the Court found that Defendant's guilty plea was "entered voluntarily and with full understanding of the rights being given up, and that there is a factual basis for [his] plea." *Id*. 16:9-14.

Apart from these contemporaneous findings, Defendant's allegations are facially unbelievable, particularly in context of the case record. Defendant contends he was promised that Lakisha would be released – in effect, that the Indictment against her would be dismissed. This is a fantastic claim; no prosecutor would have made such a promise under the circumstances. A district court must authorize the dismissal of a grand jury indictment, *see* Fed. R. Crim. P. 48(a), and to obtain authorization, a prosecutor must inform the court of the "reasons for dismissing the indictment and the factual basis for the prosecutor's decision." *United States v. Strayer*, 846 F.2d 1262, 1265 (10th Cir. 1988). Ms. Maye had no reason to dismiss the Indictment against Lakisha because Lakisha had already reached a plea agreement with the government [Doc. No. 198] and signed a plea petition [Doc. No. 199] admitting her guilt of the offenses in Counts 11 and 39 of the Indictment and stating a factual basis for her guilty plea.[9]

---

[9] Although these documents were not filed of record until Lakisha's plea hearing on August 13, 2012, they were both already signed on July 16, 2012.

The only plausible view of Defendant's claim – which is supported by Mr. Coyle's description of events and correspondence, and consistent with Lakisha's unsworn affidavit [Doc. No. 512-7] – is that Defendant sought Lakisha's release from pretrial detention and assurance that she would not be prosecuted for helping to smuggle a cell phone into the Grady County jail on July 27, 2012. Based on this contraband accusation, Lakisha's bond had been revoked and an order detaining her had been issued a week before Defendant's meeting with Ms. Maye and Mr. Coyle. *See* Pet. Action Conditions of Pretrial Release [Doc. No. 154]; Min. Entry [Doc. No. 155]; 7/31/12 Order [Doc. No. 156]. Like dismissal of the Indictment, no rational prosecutor would promise release of a pretrial detainee where, as here, a detention order had already been issued. At that point, only the Court could order Lakisha's release from pretrial custody. The prosecutor would have discretion, however, not to pursue a formal charge. This is in fact what happened.

Equally fantastic is Defendant's allegation that he was promised release from his placement in the SHU at the Grady County jail. Although this placement might also have been related to the contraband accusation, neither a prosecutor nor a defense attorney can control matters of jail administration. Neither Ms. Maye nor Mr. Coyle could know, or even predict, what action jail administrators would take upon being informed (as they were) that no formal charges would be brought against Defendant based on a contraband violation. Defendant cannot expect the Court to disregard his numerous written statements and oral representations regarding the voluntariness of his guilty plea, in favor of a self-serving allegation that he was promised release from the SHU, which allegation

13

was first raised months later only after his initial presentence investigation report had been disclosed.

Further, Defendant fails to allege sufficient facts to support a finding that he was prejudiced by Mr. Coyle's alleged misconduct, that is, any false promise that was made caused him to plead guilty when he otherwise would have proceeded with a jury trial. Defendant makes only a conclusory assertion in each of two affidavits [Doc. Nos. 512-2 and 512-4] that, but for Mr. Coyle's alleged errors, he would not have pleaded guilty but would have insisted on going to trial. This statement does not meet Defendant's burden of showing prejudice under the objective component discussed in *Heard*, which requires proof "that a decision to reject the plea bargain would have been *rational* under the circumstances." *See Heard*, 728 F.3d at 1184 (emphasis is original) (internal quotation omitted). Where a defendant presents only "bald, post hoc and unsupported statements that [he] would have changed his plea absent counsel's errors, . . . the inquiry will focus on the objective evidence." *Id.*; *accord United States v. Oviedo-Tagle*, 657 F. App'x 803, 806 (10th Cir. 2016) (unpublished); *see also United States v. Gilchrist*, 685 F. App'x 638, 642 (10th Cir. 2017).[10]

As discussed *supra*, Defendant articulates no viable defense to the 33 charges against him. Without the Plea Agreement, in which the parties stipulated on an amount of ecstacy attributable to Defendant, he could have been held accountable for other controlled substances (crack cocaine and methamphetamine) allegedly involved in the drug

---

[10] Unpublished opinions cited pursuant to Fed. R. App. P. 32.1(a) and 10th Cir. R. 32.1(A).

conspiracy charged in Count 1, and exposed to a maximum punishment of a lifetime prison sentence.[11]  Had Defendant weighed the plea deal's benefits against the negligible chance of an acquittal by a jury, he could not rationally have insisted upon going to trial.  In short, Defendant fails to allege facts to show he would have rejected the Plea Agreement he had previously signed, but for Mr. Coyle's alleged misconduct with Ms. Maye in promising Lakisha's release and his removal from the SHU.[12]

For these reasons, the Court finds that Defendant has failed to show ineffective assistance of Mr. Coyle based on his alleged coercion of Defendant to plead guilty by supporting Ms. Maye's false promises of non-prosecution and release.

### 4. Incorrect Advice Regarding a Possible Prison Sentence

Mr. Coyle allegedly failed to provide competent advice by "misrepresenting the amount of imprisonment time [Defendant] would receive if he accepted the government's plea offer."  *See* Def.'s Br. at 19.  Defendant claims, inconsistently, that Mr. Coyle "advised him that he would never receive more than 17 years minimum to 30 [years] maximum, and that he would never receive a sentence above 22-24 years, if he were to accept the prosecution[']s plea offer."  *Id*. (emphasis omitted).  Defendant goes further,

---

[11] The impact of the Plea Agreement is described in the Final Presentence Report [Doc. No. 351], which explains that convictions on all charges of the Indictment would have resulted in a sentence of life imprisonment but the statutory maximum penalties on Counts 1 and 2 limited the advisory guideline range to 60 years (720 months).  After the Plea Agreement, Defendant's witness tampering caused an enhancement for obstruction of justice to be added and the agreed downward adjustments for acceptance of responsibility to be lost.

[12] Defendant signed the Plea Agreement on July 24, 2012; the paperwork to which Defendant refers can only mean the Petition to Enter Plea of Guilty signed August 7 or 8, 2012.  *See* 3/9/13 Order [Doc. No. 325] at 9-10.

15

stating that during a meeting at the courthouse shortly before the plea hearing, "Mr. Coyle guaranteed [him] that agreement would be honored by Ms. Maye and the court during sentencing." *Id*. (emphasis omitted).[13]

Defendant's assertion that he pleaded guilty based on counsel's advice or promise that he would receive no greater than a 24-year sentence is belied by his Petition to Enter Guilty Plea, the Plea Agreement, and the plea colloquy. The Plea Agreement itself advised Defendant of the maximum penalties that could result from a guilty plea to Counts 1 and 2 (*see* Plea Agreement [Doc. No. 186] at 3-4, ¶ 3), and further informed Defendant that his sentence was within the sole discretion of the Court. *Id.* at 6, ¶¶ 6-7. Likewise, the Petition plainly stated the maximum prison sentences Defendant could receive and that his sentence was solely a matter for the judge to decide. *See* Plea Pet. at 4-5 & 8, ¶¶ 18-19, 32. During the Rule 11 colloquy, Defendant was again informed of the maximum sentences to which he was subject and that the sentence was within the Court's sole discretion. *See* Plea Tr. 3:22-4:7, 8:14-17.

In any event, the Tenth Circuit has held that "[a] miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance arising to the level of ineffective assistance of counsel." *United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993); *see also United States v. Silva*, 430 F.3d 1096, 1099 (10th Cir. 2005) ("erroneous sentence estimate by defense counsel does not render a plea

---

[13] Although Mr. Coyle denies making any such guarantee, he admits estimating a likely sentence of 20-25 years, before Defendant engaged in the additional offense of witness tampering and attempted to avoid his guilty plea, which increased his sentence. *See* Coyle Aff. [Doc. No. 527- 1].

involuntary") (internal quotation omitted).  Further, where a district judge sufficiently informs a defendant of the possible sentence before accepting his guilty plea, as this Court did here, the defendant has suffered no prejudice from a misstatement by counsel.  *See United States v. Parker*, 720 F.3d 781, 788 (10th Cir. 2013); *Gordon*, 4 F.3d at 1571. Therefore, the Court finds that Defendant's allegation that Mr. Coyle erroneously advised him regarding a possible prison sentence is insufficient to show ineffective assistance of counsel.

### 5. Failure to Challenge Wiretaps

Liberally construing Defendant's allegations and arguments, he arguably claims that a successful challenge to the wiretaps used in the investigation against him might have resulted in the exclusion of evidence gathered through the wiretaps and sufficiently weakened the strength of the prosecution's case that it might have altered his decision to plead guilty.  In addition to the speculative nature of this argument, Defendant provides no facts to support it.  He argues general legal requirements regarding Title III wiretaps and further expands the argument regarding territorial jurisdiction, discussed *supra*, that Mr. Coyle did not review "GPS data" for the target cell phones before the guilty plea hearing.  *See* Def.'s Br. at 27.  For the reasons previously stated, the Court finds Defendant's allegation that Mr. Coyle failed to challenge the wiretaps, or seek to exclude any incriminating communications intercepted with the wiretaps, is insufficient to show ineffective assistance of counsel affecting Defendant's guilty plea.[14]

---

[14] Defendant also fails to provide any factual basis to determine he was an "aggrieved person," as defined by 18 U.S.C. § 2510(11), with standing to challenge any particular wiretap.

### 6. Failure to Explain the Sentencing Guidelines

Defendant argues generally that Mr. Coyle failed to explain the "basis mechanics" of the Sentencing Guidelines, the provision regarding relevant conduct, and the possibility of an enhancement. *See* Def.'s Br. at 29. Defendant complains specifically of receiving a two-point enhancement for possession of a firearm. *Id.* at 30. Without citing legal authority, Defendant presumably emphasizes "basis mechanics" in an attempt to "distinguish ordinary errors in applying the guidelines from complete unfamiliarity with their basic structure and mechanics." *See United States v. Washington*, 619 F.3d 1252, 1259 (10th Cir. 2010).

Like possible sentences, however, the Sentencing Guidelines were discussed in both Defendant's Plea Agreement (at 7-8, ¶ 7) and his Petition to Enter Guilty Plea (at 7-8, ¶¶ 25-31), which included an explanation of relevant conduct (¶ 26). The Court repeated this advice for Defendant before accepting his guilty plea. *See* Plea Tr. 8:18-9:13. The Court knows Mr. Coyle, an experienced member of the CJA panel, is knowledgeable about how the Sentencing Guidelines work, and he specifically assured the Court in writing that he "advised the defendant about the applicable sentencing procedures, including procedures under the Sentencing Guidelines" and "explained to the defendant the potential consequences of a plea of guilty in light of the questions and concerns set forth" in the Plea Petition regarding sentencing considerations. *See* Plea Pet. at 12 (Certificate of Defense Counsel, ¶ 4.) The impact of the Sentencing Guidelines was obviously addressed in plea negotiations because the parties reached stipulations regarding the type and quantity of drugs for which Defendant would be held accountable and certain downward adjustments.

*See* Plea Agreement at 7-8, ¶ 7. Therefore, the Court finds Defendant's conclusory allegations that Mr. Coyle failed to sufficiently explain the Sentencing Guidelines and that this failure caused him to plead guilty, are insufficient to show ineffective assistance of counsel.

### Request for an Evidentiary Hearing

Within the § 2255 Motion, Defendant requests an evidentiary hearing to prove his allegations of coercion, misrepresentation, and mistake by Mr. Coyle. The Tenth Circuit has summarized the legal principles governing this issue as follows:

> [A] district court is not required to conduct an evidentiary hearing when a petitioner's allegations merely contradict his earlier sworn statements. *Hedman v. United States*, 527 F.2d 20, 21 (10th Cir. 1975) (per curiam). "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977). Accordingly, the "truth and accuracy" of a defendant's statements during the Rule 11 proceeding "should be regarded as conclusive in the absence of a believable, valid reason justifying a departure from the apparent truth of his Rule 11 statements." *Hedman*, 527 F.2d at 22.

*United States v. Weeks*, 653 F.3d 1188, 1205 (10th Cir. 2011). For the reasons set forth above, the Court finds that Defendant has failed to present a believable, valid reason justifying a departure from the apparent truth of his Rule 11 statements. Therefore, no hearing is necessary to resolve his § 2255 Motion.

### Conclusion

For these reasons, construing Ground One as asserting claims of ineffective assistance of counsel in negotiating or reaching a plea agreement and entering a guilty plea,

Defendant has failed to show either that his counsel's performance was objectively unreasonable or that Defendant was prejudiced. He has not alleged or shown a reasonable probability that, but for counsel's alleged unprofessional errors, Defendant would not have pleaded guilty and would have insisted on going to trial. Therefore, Defendant is not entitled to relief from his conviction and sentence under § 2255.

IT IS THEREFORE ORDERED that Defendant Johnnie Ray Bragg, Jr.'s Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence [Doc. No. 511] is DENIED. A separate judgment shall be entered.

IT IS FURTHER ORDERED that pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a movant. A COA may issue only upon "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. §2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *see Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Upon consideration, the Court finds this standard is not met in this case. Therefore, a COA is denied, and the denial shall be included in the judgment.

IT IS SO ORDERED this 20th day of June, 2018.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE